*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

REMI ANTHONY WEST,

        Defendant-Appellant.

UNPUBLISHED
May 15, 2026
9:48 AM

No. 370905
St. Clair Circuit Court
LC No. 22-002220-FH

Before: RIORDAN, P.J., and GARRETT and MARIANI, JJ.

RIORDAN, P.J. (*dissenting*).

I respectfully dissent.

The issue before us is whether the trial court denied defendant his right of allocution. As the majority correctly notes, this issue is unpreserved because defendant did not object at the time. See *People v Bailey*, 330 Mich App 41, 66; 944 NW2d 370 (2019). Unpreserved issues are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (cleaned up).

MCR 6.425(D)(1)(c), at the time relevant to this case, required the trial court to give a defendant "an opportunity to advise the court of any circumstances they believe the court should consider in imposing sentence[.]"[1] MCR 6.425 does not "require the court to 'specifically' ask the defendant if he has anything to say before being sentenced. It merely requires that the defendant be presented with an opportunity to allocute." *People v Petit*, 466 Mich 624, 633; 648 NW2d 193 (2002). "[T]he right to allocution does much more than permit an accused to plead for

---

[1] MCR 6.425 has since been amended, but the underlying right of allocution remains unaffected.

-1-

mercy. It ensures that sentencing reflects individualized circumstances." *People v Petty*, 469 Mich 108, 121; 665 NW2d 443 (2003) (cleaned up).

A defendant must be given "a meaningful opportunity for allocution." *Bailey*, 330 Mich App at 67. "[A] single interruption, where a defendant otherwise receives a reasonable opportunity to speak, does not deprive the defendant of the right of allocution." *People v Dixon-Bey*, 340 Mich App 292, 302; 985 NW2d 904 (2022). It is "appropriate for the court to interrupt for the purpose of seeking clarification of a defendant's statements." *Id.* "However, allocution is the defendant's opportunity to address the court, not the court's opportunity to conduct an interrogation or deliver a lecture." *Id.* (emphasis omitted). "The trial court may deliver a lecture or express its disbelief afterwards, during sentencing. During allocution, it must permit the defendant a meaningful opportunity to speak." *Id.*

In this case, the trial court initiated the overall exchange and allocution by asking defendant, "[W]hat would you like to say to me before I impose sentence?" Defendant responded by explaining that he "will always be a man to take full responsibility for [his] actions," which caused the trial court to interrupt him with an expression of disbelief.[2] The trial court and defendant then engaged in a back-and-forth with the trial court implying its displeasure with defendant. After doing so, the trial court asked defendant, "What else would you like to say, sir?" Defendant replied by explaining how he would be productive both in prison and after he is released, how he has support from family and religion, and by thanking those who urged leniency on his behalf. Defendant concluded with the assertion that he will exit prison as "a bigger and better man." The trial court then said that "it's very easy to say those things," and the trial court and defendant engaged in another back-and-forth, with the trial court again expressing its displeasure with defendant.

Ideally, the trial court should not have interrupted defendant at the beginning of the overall exchange when he said that he assumed "full responsibility" for his actions. That implicit criticism should have been given after defendant completed his allocution. See *id*. However, the trial court then expressly gave defendant another opportunity to address the court, and he did so by raising several points, such as his desire to obtain a commercial driver's license. This constituted his allocution. The trial court's follow-up comment, "Well, it's very easy to say those things," was the transition from his allocution to the trial court's own lecture and admonishment of defendant. In other words, while defendant correctly observes that the trial court repeatedly lectured and interrupted him after that comment, the trial court did not err by doing so because that lecture and those interruptions were part of the trial court's opportunity to address defendant, not vice versa. See *id*.

Defendant argues that he was not given a meaningful opportunity for allocution because, after he explained how he would emerge from prison as a better person, the trial court "interrupted" him with the comment about "it's very easy to say those things." However, that is a misreading

---

[2] Admittedly, the trial court's frustration here is understandable. Defendant resisted arrest at the hotel, fled the state for several months to avoid sentencing and, while the record is not entirely clear regarding what occurred when he was ultimately apprehended in October 2023, it appears that defendant was less than complaint at that time as well.

of the transcript. The direct reading of the transcript shows that defendant raised several points on his own behalf to the trial court, that he concluded with an overarching comment about being a better person, and that after he finished doing so, the trial court made its comment at issue. Indeed, when the trial court interrupted defendant or others elsewhere in the sentencing transcript, the trial court often did so mid-sentence, and the stenographer often signaled that interruption with a double-dash. There are no such indicators of an interruption after defendant ended his relatively lengthy plea for himself.[3]

---

[3] The majority reasons that the trial court plainly erred because "[i]nstead of waiting until West was finished with his allocution to voice her thoughts, Judge Lane continually interrupted, interrogated, and lectured him, denying him a meaningful opportunity to speak." However, I believe that the transcript indicates that defendant was given a full and fair opportunity to address not only trial court, but those in the courtroom and elsewhere who supported him:

> THE COURT: What else would you like to say, sir?
>
> THE DEFENDANT: I will be taking full advantage of this rehabilitation time by going back to school and getting my degree in business management, obtaining a trade and last but not least, getting a CDL license so I can start a financial generating legitimate business and change the narrative for my kids in last name sake.
>
> I have a huge support system that's going to be by my side during this dark, dark, long, and dark journey of my life. I also know that the Lord and Savior wouldn't place anything on my plate he doesn't think I can endure or go up against.
>
> So with that being said, I just want to thank every individual who came and supported me and to know whatever that time that is given from you, I will be taking full advantage of and coming out a bigger and better man.
>
> THE COURT: Well, it's very easy to say those things.
>
> THE DEFENDANT: I truly mean them. I truly mean them.

In my view, the transcript best indicates that defendant had an opportunity, without interruption, to recite several points that he had likely reflected upon before sentencing to cast himself in a more favorable light. And, as explained in this dissent, the overall context of the transcript indicates that the trial court's statement, "Well, it's very easy to say those things," was not an interruption but, rather, a statement that followed upon defendant concluding his remarks. Further, the fact that defendant responded to the trial court with, "I truly mean them. I truly mean them," indicates that defendant had no additional points to raise on his own behalf. In other words, defendant indicated that he had nothing further that he wanted to state to the trial court and his supporters. Thus, the transcript not only suggests that defendant was given an opportunity to speak without interruption, but also that he had nothing more to add when given another opportunity to do so.

Under these circumstances, while the trial court arguably erred by interrupting defendant at the beginning of their overall exchange, any error was minimized by the fact that the trial court then expressly asked defendant whether he would like to further address the court, and defendant used that opportunity to raise several points on his own behalf. Further, and importantly, the record does not indicate that the trial court interrupted defendant when he raised these additional points. In addition, the fact that defendant raised several points on his own behalf suggests that he was not intimidated into silence. Compare *id*. at 303 ("Defendant declined to speak further, following the trial court's dismissive response to her attorney's objection to the trial court grilling defendant instead of listening to her. Under the circumstances, that can hardly be construed as an expression of satisfaction; it is far more likely to have been the result of intimidation . . . ."). Thus, I conclude that any error by the trial court was not "plain" or "obvious," and defendant is not entitled to relief. See *Carines*, 460 Mich at 763.

For these reasons, I would affirm the trial court.

/s/ Michael J. Riordan